## KEELEY v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 7105.

Circuit Court of Appeals, Seventh Circuit.

July 3, 1940.

634

George T. Evans and Gerard E. Grashorn, both of Chicago, Ill., George B. Christensen, of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., and Louis W. Dawson, of New York City, of counsel), for appellant.

James D. Murphy, of Chicago, Ill. (Albin Dommermuth and James A. Carey, both of Chicago, Ill., of counsel), for appellee.

Before TREANOR, KERNER, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This is an appeal by the defendant from an adverse judgment in a suit by the plaintiff based upon a policy of insurance.

Plaintiff-appellee has directed our attention to the defendant's failure to file with the Clerk of the District Court a statement of the points of error to be relied upon in this court. Appellee asks for a dismissal of the appeal in reliance upon Rule 9 of this court which provides that "No appeal shall be considered unless such statement of points shall have been * * * filed." The present rules of this court became effective November 10, 1939, and by order of this court "do not apply to cases in which an appeal has been taken * * * before November 10, 1939." The instant appeal was taken on September 2, 1939, and defendant was correct in urging that rule 9 of the present rules does not apply.

But granting that rule 9 of this court does not affect this appeal, it does not follow that defendant's appeal is free from the infirmity incident to an omission of a statement of points of error. The Rules of Civil Procedure for the District Courts were in effect at the time that the instant appeal was taken and it is clear from a reading of rule 75, 28 U.S.C.A. following section 723c, that appellant was under a duty to serve upon the plaintiff and file a concise statement of the points to be relied upon by the appellant. Rule 75(a) requires the appellant to serve "upon the appellee and file with the district court a designation of the portions of the record, proceedings, and evidence to be contained in the record on appeal;" and Rule 75(d) provides that "if the appellant does not

designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on which he intends to rely on the appeal." Since defendant-appellant did not designate for inclusion "the complete record and all the proceedings and evidence in the action" he was required by Rule 75(d) to "serve with his designation a concise statement of the points on which he intends to rely on the appeal." The record discloses that defendant did serve and file its designation but does not disclose that it either served or filed a concise statement of the points on which it intended to rely on the appeal.

Rule 73(a) provides that failure to take any of the steps beyond the notice of appeal is ground for such action as the appellate court may consider appropriate, including dismissal of the appeal. If the rules of this court which became effective November 10, 1939, had been in force at the time that this appeal was taken, it is clear that the instant appeal would be dismissed. This would follow from rule 9 which, in harmony with rule 75 of the Rules of Civil Procedure, requires the filing with the clerk of the district court, for inclusion in the record on appeal, a statement of points "which shall set out separately and particularly each error asserted and intended to be urged." Rule 9 further provides that no appeal shall be considered unless such a statement of points "shall have been so filed." Furthermore, under the rules which were superseded by our present rules, there was an express provision that no appeal should be allowed until the appellant had filed with his petition for appeal an assignment of errors which should specify separately and particularly each error asserted and intended to be urged. Since under the present Rules of Civil Procedure an appeal is taken "by filing with the district court a notice of appeal" our old rule 10 unquestionably was rendered ineffective by rule 75 of the Rules of Civil Procedure.

Rule 73(a) provides that failure of an appellant to take any of the further steps to secure a review of the judgment "is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the appellate court deems appropriate, which may include dismissal of the appeal." No remedy is provided by the Rules of Civil Procedure for failure to serve and file a statement of the

points to be relied upon on appeal and, consequently, this court must determine what action is appropriate.

█ It is evident that this court has treated an assignment of errors as an essential part of the record on appeal. Under our present rules it is a condition precedent to our consideration of an appeal that "the appellant file with the clerk of the district court, for inclusion in the record on appeal, a statement of points which shall set out separately and particularly each error asserted and intended to be urged."

█ Apparently the purpose of rule 75(d) is to insure that the matter brought up in the record on appeal is adequate to protect the interests of the appellee. If the appeal record contains less than a complete transcript of all the proceedings, including the evidence, in the trial court it is important to the appellee that he be informed of the points to be relied upon in order to determine whether or not the matter designated for inclusion is sufficient to enable him to answer the contentions of appellant. If it is not sufficient the appellee "may serve and file a designation of additional portions of the record, proceedings and evidence to be included." Obviously, if the appellant's designation includes "the complete record and all the proceedings and evidence in the action" the appeal record will be adequate for all the needs of the appellee.

█ But the policy of this court has been, and still is, to require a reasonably definite statement of the points to be relied upon in this court whether such points are designated "assignment of errors" or a "concise statement of points to be relied upon on appeal." And the foregoing requirement has not been affected by the quantum of the appeal record. As already suggested the purpose of rule 75 of the Rules of Civil Procedure is to insure that enough of the proceedings in the trial court be designated for inclusion, from the standpoint of both appellant and appellee, to adequately present on appeal the points of error relied upon by appellant. But our former rule 10 and present rule 9 are concerned only with the assignment of errors or statement of points to be relied upon and make no requirement respecting the inclusion of any, or all, portions of the record, proceedings and evidence in the action below. The purpose of rule 10 and rule 9 is to require systematic and orderly presentation of appellant's claims which, under our type of appellate procedure, are essentially claims of erroneous action by the trial court. The enforcement of such a rule protects the interests of the appellee but more especially facilitates the work of this court. There must be a time limit on the appellant's right to decide what questions he wishes to present to this court, otherwise the cause on appeal might pend indefinitely. This court, by rule 9, has made it necessary for an appellant to make such decision in time to file a statement of points with the clerk of the District Court for inclusion in the record on appeal.

█ It follows from what we have said that if our present rule 9 had been in force at the time that the instant appeal was taken it would be necessary to dismiss the appeal. But any action which we take upon the suggestion of appellee must be predicated upon a violation of the Rules of Civil Procedure; and as already stated the purpose of the particular provisions which have been violated by appellant is to protect the appellee against an inadequate record on appeal. Appellee, however has not suggested that her cause on appeal was in any way prejudiced by the failure of appellant to either serve, or file with the clerk, a concise statement of the points to be relied upon on appeal. In the absence of any claim of injury, we do not feel justified in dismissing the appeal.

For the purpose of the discussion of the merits of the cause on appeal we call attention to the following facts which were found by the District Court. The defendant insurance company issued a policy on the life of Thomas F. Keeley under date of April 30, 1901. On May 28, 1906, the policy became, and was continued, "as and for a paid-up policy for 10,875 gold dollars without participation in a surplus and without any other right or privilege, whether of surrender value or otherwise," etc. In the year 1923, pursuant to the statutory enactment by the legislature of New York, defendant gave to the Keeley policy, and to other policies issued by defendant on like terms and conditions, a cash surrender value. In 1928 the insured, Thomas F. Keeley, applied for a loan on the policy. The loan note was signed in Chicago, Illinois, by Thomas Keeley who had been advised by the defendant that "the matter of completing the loan may be taken up direct with the company's local manager." On June 18, 1928, Keeley sent the policy of

life insurance and his loan note to the company's representative in Chicago, Illinois, and received the proceeds of his loan from the Chicago representative of the insurance company. The loan application and the loan note and agreement were made and executed in Chicago, Illinois, and the loan note and agreement and the accompanying life insurance policy were delivered in Chicago, Illinois, to the defendant.

Keeley paid the interest on the note on April 30, 1929, April 30, 1930, April 30, 1931, and April 30, 1932. No payments of interest were made thereafter, and pursuant to the terms of the loan note the interest was added to the amount of the principal, thus increasing the amount of the principal from $6,431 to a total indebtedness on April 30, 1934, in the sum of $7,225.87.

Thomas F. Keeley died on August 17, 1934. On August 27, 1934, the loan record card of Keeley was stamped "Surrender cancellation August 27, A. D. 1934, entries completed."

On August 17, 1934, the date of Thomas F. Keeley's death, the total indebtedness of Thomas F. Keeley to the defendant company was less than the loan value of the policy.[1]

Appellant, relying upon the provision of the loan agreement, contends that the policy was "deemed surrendered as of April 30, 1934." Appellant points out that on April 30, 1934, the interest due as of that date, plus the unpaid indebtedness on the note, amounted to $7,225.87; also that the interest which would be due on the next succeeding anniversary would be $433.55, which added to the existing indebtedness, would make a total indebtedness of $7,659.42. Since the cash surrender value, as

of April 30, 1935, the next succeeding anniversary, would amount to $7,615.76, there would be a deficiency of $43.66; and, appellant contends, that since the cash surrender value at the next anniversary of the policy following April 30, 1934, would lack $43.66 of equalling the total amount of indebtedness as of April 30, 1935, the policy, under the loan agreement, must be "deemed surrendered" and "rendered null and void without any action on the part of the company," as of April 30, 1934.

The foregoing result is authorized by the language of the loan agreement; but the plaintiff-appellee contends, and the District Court so held, that the foregoing provision of the loan note was invalid under the law of Illinois. The particular provision of the Illinois statute which is involved reads as follows: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, if it contain any of the following provisions: * * * (5) A provision for forfeiture of the policy for failure to repay any loan on the policy, or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof."[2]

The loan provision, if effective, clearly contravenes and nullifies the public policy clearly disclosed by the statutory enactment. The policy in question contained no provision in conflict with the statutory prohibition and was, in fact, issued prior to the enactment of the statute. But the loan agreement was executed after the enactment of the statute and while it was in effect; and the agreement provided for the forfeiture of the insurance policy at a time

---

[1] The agreement of the loan note contains the following: "If the cash surrender value that would be allowed by the Company at the next following anniversary of the policy (if the policy were then in force) is less than the amount of the loan with added and accrued interest to such next following anniversary, in case of failure to repay this loan with accrued interest on the date when due as herein provided, or at the expiration of any extension or renewal thereof, or in case of failure to pay the accrued interest on the due date of this loan, or at the expiration of any extension or renewal thereof, if such failure to repay the loan or to pay such accrued interest shall continue for thirty-one days, the said policy shall immedi-

ately thereupon be deemed surrendered to the Company and thereby rendered null and void without any action on the part of the Company, and a sum equal to the customary cash consideration then allowed by the Company as the surrender value of policies issued upon like terms and conditions shall, at the end of said thirty-one days, immediately be deemed applied in repayment and satisfaction of said loan and interest, without any action on the part of the Company, and the remainder (if any) of said sum shall be paid by the Company to the parties entitled thereto, whenever thereafter a demand accompanied by the policy is made by them at the Home Office of the Company."

[2] Smith-Hurd Stats.Ill. c. 73, § 262(5).

when the total indebtedness on the policy was less than the loan value thereof. If the forfeiture provision were held to be valid, it would become, for all practical purposes, a rider for the policy and the defendant company would be enabled to accomplish by such an arrangement a result which the statute definitely banned. We approve the following statement of law by the District Court: "The State of Illinois in the exercise of its police power has made proper and lawful regulations both as to standard provisions that a policy of life insurance must necessarily contain, and as to provisions that are prohibited. No citizen of the State or company doing business in the State can contract in Illinois to do indirectly in a loan agreement that which is prohibited directly in the policy, for to do so would be contrary to the public policy of the State, and the loan agreement as to the prohibited provisions is inoperative."

■ Defendant urges that the loan contract was made under and pursuant to the laws of the State of New York and should be governed thereby; and there is a provision in the loan note and agreement which recites the foregoing. While the facts refute the recital we do not think it is material whether the loan agreement is called a New York contract or an Illinois contract. If allowed to control the rights of the parties created by the contract of insurance the effect would be to nullify the public policy of Illinois relating to a contract of insurance which was clearly subject to and controlled by the law of Illinois. As aptly stated by the District Court, "Parties may agree that a contract shall be construed according to laws of another state and make its provisions controlling provided, however, such provisions do not conflict with the law or public policy of the state in which the contract was made."

■ Defendant urges that the automatic surrender of the rights under the policy does not constitute a forfeiture, but merely gives effect to a fair agreement of the parties. The fact that the result is in conformity with an agreement is not material since forfeitures are usually provided for by contracts, express or implied. And the statutory prohibition which is relied upon by appellee is a prohibition against the inclusion of a contract provision for forfeiture of policy for failure to repay any loan on the policy, or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof. Furthermore, granting that the statutory prohibition in question is a valid exercise of power by the legislature of Illinois, it is not material whether an agreement which falls within the condemnation of the statute is fair or unfair.

■ We are of the opinion that the provision in question is a forfeiture provision within the meaning of the term forfeiture as used in insurance and as recognized by judicial decisions. The loan agreement provides that upon failure to repay the loan or to pay accrued interest within thirty-one days "the said policy shall immediately thereupon be deemed surrendered to the Company and thereby rendered null and void without any action on the part of the company. * * *" In short, not only all rights of the insured under the loan agreement, but also those under the policy are extinguished without notice to the insured. It is true that he is entitled to receive any unused balance of the surrender value of the policy, but any legal interest under the policy is destroyed, regardless of the existence of a sufficient balance of the cash surrender value to maintain the policy in force beyond the date of automatic surrender. In this case the balance was more than enough to keep the policy in force until after the death of the insured. The extinguishment of the rights of the insured under the policy by the terms of the loan agreement is exactly such a result as the Illinois statute outlaws. In the instant case it is of some significance for the question of forfeiture that the note did not represent premiums. The policy in question was a paid-up policy and the insurance company had loaned money to the insured upon the security of the cash value of the policy and was in a strict sense an ordinary lender of money. The company was in a better position than a third party lender would have been since the company could apply the cash surrender value of the policy to the payment of principal and accrued interest. But under the terms of the loan agreement the defendant company not only was protected against loss in connection with the loan by applying the insured's cash surrender value to the discharge of the loan, but also enjoyed the independent right of an automatic surrender of the insured's right under the insurance policy long before the cash surrender value ceased to be adequate protection to the

company for its loan to the insured. We think that the facts satisfy all the requirements of a forfeiture.

We are of the opinion that the District Court did not err in its statement of the law as applicable to the facts of the case, and the judgment of the District Court is affirmed.